## THE ADAMS BANK *versus* ELIPHAZ JONES *et al.*

A joint and several promissory note of J and S, who had been partners, made payable to a bank, for the purpose of being discounted in order to pay partnership debts, was delivered by J to one of his separate creditors, J stating that the cashier declined discounting it but said it should be discounted in a short time. The bank however refused to discount it, or to indorse it without recourse, or to give permission to the creditor to commence an action upon it in the name of the bank, the directors declaring, that they were determined to stand impartial between the parties. A bond of indemnity against the costs of such an action was sent to the bank, and filed away therein, but the subject was not acted upon by the directors. It *was held,* that no action could be maintained upon the note in the name of the bank, by the creditor, without its consent, express or implied; that the consent of the bank could not be implied from these circumstances ; that even if the bank had consented thereto, such action could not be maintained, because the bank refused to discount the note, and consequently there never was any valid contract between them and the makers thereof; and that no action could be maintained by such creditor in any form against S, it being fraudulent in J to appropriate it for the payment of his separate debts.

ASSUMPSIT on the following promissory note :

"Adams Bank, June 1, 1833. Ninety days from date, we, Eliphaz Jones and Asa Severance, as principals, and Cyrus Alden, as surety, for value received, jointly and severally promise the President, Directors and Company of the Adams Bank, to pay them or their order, fourteen hundred dollars at their banking house. Eliphaz Jones, Asa Severance, Cyrus Alden.

Please pay proceeds to Stephens & Corlies or order. Eliphaz Jones."

The defendant Jones did not appear. The defendants, Severance and Alden, appeared separately, and moved that the action should be dismissed, on the ground, that the coun-

---

sel appearing in behalf of the plaintiffs were not authorized to prosecute the action.

The parties stated a case.

The counsel for the plaintiffs appeared in behalf of the firm of Stevens & Corlies, of New York, who, as they contended, were the equitable assignees of the note.

In the autumn of 1832, Severance entered into partnership with Jones, but after three or four months the partnership was dissolved. The note in suit was made for the purpose of obtaining money from the bank by a discount thereof, in order to pay the debts of Jones & Severance.

By the deposition of Henry H. Reynolds it appeared, that Jones, in April 1832, purchased goods of Stevens & Corlies, to the amount of $718·78, on a credit of twelve months, which were delivered to his order ; that in May 1833, Jones proposed to Stevens & Corlies to give in payment of the debt due from him to them, a joint note of Jones, Severance and Alden for $1400, payable to the order of the President and Directors of the Adams Bank ; that Jones stated, that he had expected on his way to New York, to have had the note discounted at the bank ; that the cashier declined discounting it, but said it should be discounted in a week or ten days ; that Stevens & Corlies agreed to take the note on the following conditions, to wit : that they should send it to the Adams Bank to be discounted, that if discounted, they should pay the debt of Jones for the goods bought in April 1832, and also a debt due from Jones & Severance to Doughty, Robertson & Co., and that, if not discounted, they should keep the note till it was paid or collect it in regular course through the bank ; that after this arrangement was made Jones bought goods to the amount of $659·25, which were charged and delivered to him alone ; and that the note was ultimately sent to the Adams Bank for collection.

It further appeared, that in May 1833, Isaac U. Hoxie, a director of the Adams Bank, told Stevens & Corlies, that the note was good, that it was in the usual form of the notes presented to that bank for discount, and that it would be discounted as soon as the bank should be in funls ; that they accordingly applied tc the bank for a discount o' the note, but the appli·

cation was refused ; that they thereupon requested the cashier to indorse it without recourse ; that he refused, alleging, that the makers had forbid the bank from taking any steps in relation to it ; and that on June 14, 1833, the property of Jones was all attached by virtue of writs in favor of Severance, Alden and others.

In October 1833, W. G. Bates, Esq. requested permission to commence a suit on the note in the name of the Adams Bank, and offered to indemnify the bank ; but the directors replied, that they would not give such permission, that they were determined to stand impartial between the parties, and not to interfere in any way in favor of or against either. On December 17, 1834, Mr. Bates sent to the bank a bond of indemnity against the costs of such a suit ; and this bond was filed away in the bank, but the subject was not acted upon by the directors. If the Court should be of opinion, that Stevens & Corlies had no right to prosecute the action, it was to be dismissed ; otherwise, the Court were to render judgment for the plaintiffs or the defendants, upon the merits, as the Court should think proper.

Sept. 26th, at North-ampton.

C. A. Dewey and W. G. Bates, for the plaintiffs. Stevens & Corlies are the beneficial holders of the note, and may maintain this action without the consent of the plaintiffs Eastman v. Wright, 6 Pick. 316 ; Payne v. Rogers, Dougl. 407 ; Chenango Bank v. Hyde, 4 Cowen, 567 ; Rutland Bank v. Buck, 5 Wendell, 66 ; Utica Bank v. Ganson, 10 Wend. 314 ; Powell v. Waters, 17 Johns. R. 176. If such consent was necessary in the present case, there is sufficient evidence from which it may be implied. Wilson v. Mower, 5 Mass. R. 407 ; Dedham Bank v. Chickering, 3 Pick. 335 ; Cleverly v. Whitney, 7 Pick. 36 ; Jones v. Witter, 13 Mass. R. 304. The production of the note is primâ facie evidence of authority to sue in the name of the plaintiffs. Stevens & Corlies are the bonâ fide holders, for a valuable consideration; and it is incumbent on the defendants, to show that they are not authorized to bring this action.

Wells and Alvord, and Briggs, contrà, cited to the point, that the assent of the nominal plaintiffs to the prosecution of the action could not be given except by a vote, this being

a matter not in the ordinary course of their business, and not affecting their interests, *Dedham Bank* v. *Chickering*, 3 Pick. 335 ; *Bank of the United States* v. *Dandridge*, 12 Wheat. 64 ; *Proprietors of Canal Bridge* v. *Gordon*, 1 Pick. 297 ; that the note was not valid as a contract unless discounted by the bank, *Marrin* v. *McCullum*, 20 Johns. R. 288 ; that the defendants Severance and Alden, were liable upon this note, to the bank only or its assignees, whom they had chosen to be their creditors, *Allen* v. *Ayers*, 3 Pick. 298 ; *Walsh* v. *Bailie*, 10 Johns. R. 180 ; *Straton* v. *Rastall*, 2 T. R. 370 ; *Myers* v. *Edge*, 7 T. R. 254 ; *Glyn* v. *Hertel*, 8 Taunt. 208 ; *Kasson* v. *Smith*, 8 Wendell, 437 ; that as the note was misapplied by Jones, it must be shown by Stevens & Corlies that it was taken by them *bonâ fide*, in the usual course of business, and for a present and not a past consideration, *Miller* v. *Race*, 1 Burr. 452 ; *Grant* v. *Vaughan*, 3 Burr. 1526 ; *Lawson* v. *Weston*, 4 Esp. 56 ; *Collins* v. *Martin*, 1 Bos. & Pull. 648 ; *Coddington* v. *Bay*, 20 Johns. R. 644 ; *Bristol* v. *Sprague*, 8 Wendell, 423 ; *Wardell* v. *Howell*, 9 Wendell, 170 ; *Treuttel* v. *Barandon*, 8 Taunt. 100 ; *Gill* v. *Cubitt*, 3 Barn. & Cressw. 466 ; *Pidcock* v. *Bishop*, 3 Barn. & Cressw. 605 ; *Skilding* v. *Haight*, 15 Johns. R. 270 ; *Brown* v. *Taber*, 5 Wendell, 566 ; *Denniston* v. *Bacon*, 10 Johns. R. 198 ; *Woodhull* v. *Holmes*, 10 Johns. R. 231 ; *Chazournes* v. *Edwards*, 3 Pick. 5 ; *Adams* v. *Paige*, 7 Pick. 542 ; *Kasson* v. *Smith*, 8 Wendell, 437.

WILDE J. delivered the opinion of the Court. This is an action of assumpsit brought by the firm of Stevens & Corlies, of the city of New York, in the name of the Adams Bank, on a promissory note made for the purpose of being discounted at the bank, but which was not, and was afterwards delivered over to Stevens & Corlies, who now claim to recover for their own use and benefit. Before the commencement of the action, Stevens & Corlies requested the Bank to indorse the note to them, or to authorize them to commence an action thereon in the name of the bank ; which request was declined. On the ground of this refusal the defendants' counsel move that the action may be dismissed. The plaintiff's counsel oppose the mo-

*Adams Bank v. Jones.*

*May term 1836.*

tion on two grounds : 1. Because they contend that Stevens & Corlies are the *bonâ fide* holders of the note for a valuable consideration, and have a right to maintain the action in the name of the bank without their consent ; and 2. If not so, that there is sufficient evidence from which the consent of the bank may be implied. But we are of opinion, that neither of these grounds can be maintained.

We know of no principle of law or equity, which would authorize the holders of the note to commence an action in the name of the bank without their assent, express or implied. In the case of *Chenango Bank* v. *Hyde*, it was said, that a court of equity in that case would have compelled the bank to allow an action to be brought in their name if they had refused. But that case differs from this in a material point. There the bank, after refusing to discount the note, consented to become the agent and trustee of the person who had advanced money on it, and for whose use the suit was commenced. By thus becoming trustee the bank impliedly consented, that the suit should be brought in their name, and their consent was not revocable. So if there is an assignment of a chose in action, the assignor, by the assignment, impliedly gives authority to the assignee to use his name in any legal proceedings which may become necessary to give full effect to the assignment. But without consent, express or implied, no one is authorized to maintain a suit in the name of a stranger. Even a joint tenant or tenant in common may refuse to proceed in an action commenced by his cotenant in their joint names.

In this case there is no consent to the bringing of the action, on the part of the bank, either express or implied. There is no privity or connexion between them and Stevens & Corlies. They have not consented to act as trustees for the holders of the note, nor have they undertaken to assert any interest in it, or to assign it. We think, therefore, that, on strict principles of law, the action was commenced without authority.

And we are also of opinion, that if the bank had consented to allow their name to be used, this action nevertheless could not be maintained, because they refused to discount it. There

never was any valid contract between them and the makers
of the note. The mere signing of the note did not make it a valid contract. The assent of both parties is essential to the validity of a contract. *Marvin* v. *M'Cullum*, 20 Johns. R. 288. If Stevens & Corlies acquired any right by the delivery of the note to them, they should have sued in their own names. They could not, however, maintain an action on the note, nor indeed in any form, excepting against Jones. *Allen* v. *Ayers*, 3 Pick. 298.

There is also another ground of defence. This note was made and left in the hands of Jones to raise money to pay the debts of Jones and Severance, and could not be appropriated to the payment of the separate debts of Jones. It was fraudulent in Jones thus to appropriate it, and the appropriation is not binding on Severance and Alden.

*Plaintiffs nonsuit.*